IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

FRANCISCO DIAZ CRUZ,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO. 10-1657 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

Plaintiff Francisco Díaz-Cruz (hereafter plaintiff "Díaz-Cruz") was a forty seven (47) year-old individual, who was insured for disability purposes up to the time of the administrative decision. He has a college degree in business administration. His previous relevant work experience was as waiter and banquet service manager.

After the initial application for disability was denied, the requested administrative hearing was held on September 25, 2007, wherein plaintiff Díaz-Cruz testified, assisted by counsel. Thereafter, the Administrative Law Judge (hereafter "ALJ") issued a decision finding plaintiff not under disability. The Appeals Council denied the request for review.

Plaintiff Díaz-Cruz then filed this action seeking judicial review of the final decision of the defendant, the Commissioner of Social Security (hereafter "Commissioner"), denying the application for entitlement to a determination of disability and ensuing benefits. (Docket No. 1). Plaintiff Díaz-Cruz requests the administrative determination denying disability be reversed for proper consideration of his mental and pain conditions, lack of

development of his complaints of a back condition, not having recruited a medical expert, and not giving adequate weight to the treating psychiatrist's opinion.[1]

On September 20, 2010, the Commissioner answered the Complaint and filed copy of the administrative record. (Docket Nos. 6 and 7). On May 4, 2011, plaintiff Díaz-Cruz, through his legal representative, Atty. Alejandro Bellver-Espinosa, filed a memorandum of law, arguing the evidence of record, with reference to the medical record and stating the ALJ did not consider all the evidence of record. (Docket No. 22). On June 30, 2011, the Commissioner filed its memorandum in opposition. (Docket No. 25).

These motions are now herein entertained inasmuch as the parties consented to jurisdiction by this United States Magistrate Judge.

**ADMINISTRATIVE AND PROCEDURAL HISTORY AND RECORD**

Plaintiff Díaz-Cruz has claimed disability due to discogenic disease, leg problems, back pain, high cholesterol and a mental condition. Plaintiff has complained of severe low back pain, requiring assistance devices to walk, and a psychiatric condition, for which he has been treated by the Veterans' Administration for having suffered a related injury while enlisted.

The presiding ALJ followed the sequential evaluation process and considered the medical evidence on record. The ALJ determined plaintiff Díaz-Cruz was insured up to December 31, 2009, had not engaged in substantial gainful activity since the alleged date of disability, that is, September 30, 2004 and he suffered from severe impairments

---

[1] U.S.C. Sec. 405(g) provides for judicial review of the final decision of the Commissioner.
  "… [t]he court shall have power to enter, upon the pleadings and transcript
   of the record, a judgment without remanding the cause for rehearing". Section 205(g).

including a history of chronic low back pain, degenerative changes of the lumbar spine with disc bulging at L4-L5, chronic lumbosacral strain and osteoarthritis of the cervical and lumbosacral spine. The above impairments or combination thereof did not meet the requirements of the Listing of Impairments and limited his residual functional capacity to lifting and/or carrying up to twenty pounds occasionally, and ten pounds frequently; to sit, stand and walk for up to six hours in an eight hour workday, and no limitation for pushing or pulling with the upper and lower extremities, being able to occasionally stoop, crouch, and frequently climb, balance, kneel and crawl. (Tr. p. 17).

Thereafter, the ALJ, Hon. Gilbert Rodríguez, issued an opinion dated February 20, 2008, determining plaintiff Díaz-Cruz was not under disability for he was able to perform his past relevant work as a waiter and banquet service manager, activities not precluded by his residual functional capacity for light type of work. The ALJ also considered subjective complaints as to pain, using the corresponding standard, yet found the allegations to the degree claimed were unsupported by the preponderance of the medical findings which failed to present any significant severe or advanced physical or mental pathology. The ALJ further determined the record showed conservative treatment, no major neurological compromise, no muscle atrophy, and favorable response to treatment. Thus, giving greater weight to the medical opinion of the state agency medical and expert personnel as to the severity of plaintiff's condition, as well as laboratory findings, the ALJ concluded plaintiff Díaz-Cruz was not disabled.

The ALJ's decision, was affirmed by the Appeals Council, which discussed the medical impairments, as sustained by the medical evidence on record, concluding they did

not result in major limitations. Insofar as the use of crutches and even a wheelchair for mobility, the ALJ still confirmed these devices were prescribed at plaintiff's Díaz-Cruz' own request.

## THE ALJ'S DECISION AND THE APPEALS COUNCIL

The ALJ applied in the administrative process the evaluation mandated by law, insofar as concluding that plaintiff Díaz-Cruz: (1) meets the non-disability requirements for a period of disability and disability insurance benefits and is insured for benefits through December 31, 2009; (2) has not engaged in substantial gainful activity since the alleged onset date of disability of September 30, 2004; (3) allegations of severe impairments or combination thereof had more than a minimal affect on the ability to perform basic work-related activities, constituting severe impairments; (4) did not have an impairment or combination that meets or equals the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) upon consideration of the entire record plaintiff had the residual functional capacity to lift a maximum of twenty pounds with frequent lifting/carrying up to ten pounds, which did not preclude carrying out light exertion type of work. Considering plaintiff's residual functional capacities for light work and non-significant non-exertional limitations, the ALJ determined plaintiff could perform his previous kind of work as waiter and banquet room manager, finding him not under disability. (Tr. pp. 17-25 ).

The ALJ further considered plaintiff's allegations of pain as substantiated by the medical evidence and subjective complaints. The ALJ concluded based on the factors enumerated by him as to how it affected plaintiff's daily activities, the medication and/or

treatment prescribed for the alleged pain, statements about pain or other symptoms alone did not establish disability. In evaluating plaintiff's medical history and treatment, the ALJ considered to some extent how allegations of non-exertional limitations imposed by Díaz-Cruz' claims as to pain failed to be corroborated by objective medical findings, medications prescribed and medical examinations. This evidence was also assessed in conjunction with other evidence and plaintiff's testimony as to ability to perform daily activities and general functioning, which were considered not precluded and thus not meeting the disability status.

## LEGAL ANALYSIS

The Court's review is limited to determine whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence. *See* Manso-Pizarro v. Secretary of Health and Human Services, 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); Da Rosa v. Secretary of Health and Human Services, 803 F.2d 24, 26 (1st Cir. 1986); Ortiz v. Secretary of Health and Human Services, 955 F.2d 765, 769 (1st Cir. 1991).

To establish entitlement to disability benefits, the burden is on the claimant to prove that he is disabled within the meaning of the Social Security Act. *See* Bowen v. Yuckert, 482 U.S. 137, 146-47, n. 5 (1987). It is well settled law that a claimant is disabled under the Act if he/she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his/her previous work but, considering age, education, and work experience, cannot engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he/she lives, or whether a specific job vacancy exists, or whether he/she would be hired if he/she applied for work. 42 U.S.C. § 423(d)(2)(a).

In making a determination as to whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a). A five-step sequential evaluation process must be applied to every case in making a final determination as to whether a claimant is or not disabled. 20 C.F.R. §§ 404.1520; *see* Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); Goodermote v. Sec. of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982).

Through step one the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he/she is, disability benefits are denied. §§ 404.1520(b). If not, the decision-maker proceeds to step two, through which it is determined whether the claimant has a medically severe impairment or combination of impairments. *See* §§ 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is then denied. If the impairment or combination of impairments is considered severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of

a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, through which the ALJ determines whether the impairment prevents the claimant from performing the work he/she has performed in the past. If the claimant is able to perform his/her previous work, he/she is not disabled. §§ 404.1520(e).

In the present case, the ALJ considered Díaz-Cruz was able to perform his previous work. Still, if the ALJ had determined plaintiff could not perform this work, then the fifth and final step of the process demands a determination on whether plaintiff is able to perform other work in the national economy in view of the residual functional capacity, as well as age, education, and work experience. The claimant would be entitled to disability benefits only if he/she is not able to perform other work. §§ 404.1520(f). The ALJ in the instant case examined and analyzed plaintiff's case following the steps above described up to step four.

The claimant has the burden, under steps one through four, of proving that he/she cannot return to his/her former employment because of the alleged disability. Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991). In the instant case, plaintiff Díaz-Cruz was found by the ALJ able to perform his previous past relevant work and, thus, only up to step four consideration is required, without need for a vocational expert.

Although counsel for plaintiff Díaz-Cruz has raised arguments insofar as the need in this case for a medical expert and a vocational expert to testify at the administrative hearing, for the most part, the analysis of the medical evidence of record is fully submitted in defendant's memorandum of law, to which reference is made below.

Notwithstanding plaintiff's discussion as to lack of a medical expert to consider the medical findings of record, there is ample support that all the available medical findings and studies were examined at the administrative level. The Court of Appeals for the First Circuit has already indicated an ALJ is "not required to recite every piece of evidence that favored appellant" in its administrative written determination. Meléndez v. Commissioner of Social Security, 125 F.3d 841 (1st Cir. 1997); s*ee* Stein v. Sullivan, 966 F.2d 317, 319 (7th Cir. 1992) (noting that the level of articulation required is not precise). *See* 20 C.F.R. § 404.1527(d) ("We will always give good reason in our notice of determination or decision for the weight we give your treating source's opinion); SSR 96-2p ("the notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

The record available herein establishes plaintiff Díaz-Cruz had worked as a waiter and in restaurant services from 1990 through 2004, having previously suffered an accident while training with the Army around 1987-1988. At the time of alleged disability, plaintiff was a forty-seven year old, with college education in business administration. Plaintiff, as a veteran, had been receiving treatment with the Veterans' Administration. He underwent

examination by Dr. Jorge Berrios in 2004 because of complaints of back pain with radiation to the leg. On examination, Dr. Berrios referred to limited range of movement in the thora-lumbar spine, tenderness to palpation, muscle spasm, diminished sensation and muscle weakness but the patient retained normal gait, there was no muscle atrophy and had normal reflexes. (Tr. pp. 208-210). The medical diagnosis at the time was of low back pain, L5-S1 discogenic disease, lumbar radiculopathy and myositis. (Tr. p. 211).

Dr. Nydia Rodríguez-Pabón examined plaintiff in September of 2004 for complaints of back pain when climbing stairs or walking too long. Dr. Rodríguez found the patient alert, oriented, ambulatory, in no apparent distress. X-rays of the back were normal. In November of 2004, the MRI showed paravertebral muscle spasms with diffuse bulges at L4-L5 and L5-S1, mild to moderate canal stenosis and some degenerative spinal changes. (Tr. p. 422).

A consultation with neurologist Dr. Víctor Ríos-Lebrón in January 2005 referred to the patient as cooperative, using a cane, with no weakness of limbs and positive straight leg test. Dr. Ríos concluded the patient had no significant thecal sac or root compromise and surgery not an option. (Tr. p. 428).

Physiatrist Dr. Maite Urquia-Aran examined plaintiff Díaz-Cruz in April of 2005 for complaints of back pain. She found the patient alert, pleasant, cooperative, adequately groomed and in no acute distress. (*Id.* p. 334). There was some limitation of motion in the back and left leg, but there was normal straight leg test and passive left-leg range of motion was motion. Dr. Urquia stated low back complaints were associated with left sacroiliitis and lumbar muscle spasm. (Tr. pp. 333, 335). Plaintiff followed the recommended physical

therapy that Summer. An electro diagnostic test ruled out radiculopathy in August of 2005. (Tr. pp. 334, 359-60). Plaintiff returned to treatment with Dr. Urquia for back pain. Upon medical observation, the back was not asymmetric or deformed, was tender at bilateral L/S paraspinal and left S1 joint, with limited range of motion due to pain. There was negative straight-leg test, hamstring tightness, pain in the left S1 joint and decreased sensation in the left leg. Since tests for radiculopathy were negative, Dr. Urquia suggested pool therapy and medication. (Tr. p. 356).

Plaintiff Díaz-Cruz continued regular treatment with Dr. Rodríguez who described the patient as alert, well oriented, ambulatory, in no distress, well groomed with intact range of movement, adequate muscle tone, no deformities, no gross motor or sensory deficit and able to move his legs. (Tr. pp. 308-309, 378 and 424). Originally in April of 2005, Dr. Rodríguez had found pain was not adequately controlled and recommended the patient to walk more, although refers to left-leg sciatica damage and physical therapy. In January 2006, Dr. Rodríguez stated back pain was controlled with treatment. (Tr. pp. 308-309).

In February of 2006, plaintiff Díaz-Cruz was examined by Drs. Gilda Valera and Isabel Borrás-Fernández for complaints of pain limitations. Examination revealed limited back range of motion and left leg range, with adequate passive range of motion. Medication was increased and, at plaintiff's request, a Canadian crutch for more stability was prescribed. (Tr. p. 384).

Upon a referral, the patient was sent to Dr. Yemina Ramos, for pain clinic and complaints of inability to sit, stand, walk, lying down, bend, lift and cold damp weather. The patient was observed well groomed, with normal affect and emotional state, moderate

pain behavior, slightly impaired gait, pain upon palpation over the left lumbar paraspinal muscles, tenderness on the L4-S1 midline. Still, the physician noted normal sensory examination, normal motor skills and normal reflexes. (Tr. p. 304). Although recommended, the patient declined epidural steroid injections. Physiatrists Eduardo Nadal-Ortiz and Dr. Borrás met plaintiff in August of 2006 noting limited range of motion in the back and left leg. They opined there were no new deficits and the patient had declined intervention treatment, being a good candidate for chronic pain clinic. (Tr. p. 325).

Plaintiff met with a psychologist as part of the multi-disciplinary treatment. He complained of being sad, angry, anxious, frustrated, isolated and with nightmares, insomnia and loss of appetite. Dr. Virginia Grundler-Mesa reported plaintiff liked to play with animals and the garden, that he was cooperative, oriented, coherent, relevant and logical, although showed depressed mood. He had appropriate affect, normal thought content, fair attention, judgment and insight. (Tr. pp. 282-286). Dr. Grundler-Mesa referred to a major depressive disorder, with mood and anxiety interfering with daily activities. (Tr. pp. 284-285). Upon further treatment, plaintiff Díaz-Cruz was referred to anger management services. (Tr. pp. 253, 347).

Psychiatric treatment was received around October 2006 and was noted oriented, with normal thought content and process, intact memory, fair judgment and insight and no suicidal ideation. (Tr. pp. 275-277). Psychiatrist Dr. Miguel Oquendo-Graulau assessed his mood as sad, affect restricted, but coherent, relevant and logical, being appropriately dressed, with memory and concentration preserved. (Tr. pp. 273-274). The patient was

described as having normal gait and coordination, adequate hygiene, no audiovisual hallucinations or delusions, with preserved concentration, good judgment, fair insight and normal thought content. He was cooperative, logical, relevant, with fair insight and normal though content, oriented in all spheres, with some problems with recent and immediate memory. (Tr. pp. 247-248).

Additional examination by physiatrist Dr. Cuadrado in November of 2006, referred to complaints of pain, but upon examination the patient was found in no distress, no atrophies or swelling, limited range of motion in the back. Medication was increased. (Tr. pp. 268-270). A primary physician, Dr. Arnaldo Martínez-León described plaintiff Díaz-Cruz in January 2007 as alert, oriented, ambulatory, well groomed, in no apparent distress, with positive left lumbar radiculopathy. A wheelchair was ordered. (Tr. pp. 231-235).

Several examinations were conducted to determine eligibility for Veteran's compensation. The spine was described with spasm, pain and tenderness in the back, normal reflexes, some motor loss, pain upon range of motion and decreased sensation, but no weakness or atrophy. (Tr. pp. 214-216). Dr. García-Negrón diagnosed on the record degenerative changes, muscle spasms with bulges and mild to moderate spinal canal stenosis. (Tr. p. 223). He opined plaintiff could work part-time with light duties. (Tr. p. 224). Dr. Tomas Hernández-Ortíz conducted a neurological examination indicating plaintiff stated being unable to move his legs at all, for which motor strength could not be determined, thus sensation was unreliable for the patient reported sensations even when not stimulated. (Tr. pp. 195-197). Giving the benefit of the doubt to the veteran, the doctor indicated it was relating the pain to the spine disability. (Tr. pp. 198-199).

In the Summer of 2007, plaintiff reported he was using a treadmill as exercise and medication was helping. Plaintiff declined an opiod trial and intervention procedures, having good response to medication as to neuropathic symptoms. (Tr. pp. 173-174). The patient was noted with normal gait and coordination, without audiovisual hallucinations, adequate hygiene, preserved concentration, good judgment and fair insight, cooperative, coherent, relevant and logical. He had depressed mood, constricted affect and problems with recent and immediate memory. (Tr. p. 238).

Plaintiff visited the Veterans' Administration Psychiatric Intensive Care Unit on August 27, 2007, with complaints of sad feelings, poor sleep and concentration, no improvements with treatment. Dr. Pedro Vélez-González and Dr. Lillian Segarra assessed the patient ambulatory and observed him calm, appropriately groomed, with sad mood, restricted affect, no suicidal plans, preserved memory and concentration, and good insight and judgment. (Tr. pp. 179-181).

The record also contains several examinations and evaluations for state disability determinations. Neurologist Dr. Héctor Cases-Mayoral examined plaintiff who complained of back pain aggravated by bending, prolonged sitting, standing and walking. Dr. Cases observed the patient as alert, cooperative, well oriented, able to sit, stand and walk, but laying down and up with difficulty. No tenderness or deformities were noted. No atrophy shown. There was normal range of motion in the legs and limited motion as to the back. X-rays showed tiny osteophytes, muscle spasm. Dr. Cases concluded there was chronic lumbosacral strain with bulges, degenerative changes and central spinal stenosis. (Tr. pp. 397-398).

The record also contains a residual functional assessment by Dr. Lorenzo Díaz-Franco, who upon review of the medical records, determined plaintiff Díaz-Cruz could occasionally lift or carry up to fifty pounds, frequently lift or carry up to twenty five pounds, could stand or walk for about six hours in an eight-hour day, sit for about six hours and frequently climb, balance, kneel and crawl, with occasionally stooping or crouching. (Tr. pp. 389-390). Dr. Osvaldo Rivera-Marrera adopted this residual functional capacity assessment. (Tr. p. 340).

Dr. Melvin Velázquez-Muñoz, a psychiatrist not related to the Veterans' Administration, informed he had treated the patient Díaz-Cruz from September 2005 through March 2006. It revealed depressed mood, flattened affect, impaired memory and short attention span. The diagnosis was major depression, with guarded prognosis. (Tr. p. 418).

The ALJ had the opportunity to assess plaintiff's demeanor and testimony at the administrative hearing, including his subjective complaints as to pain and limitations imposed. Succinctly, Díaz-Cruz indicated he was unable to work because of pain in his back and left leg for which he had received a 50% disability from the Veterans' Administration.

The Commissioner, through the ALJ, is authorized to give greater weight to testimony and reports of medical experts commissioned by the administrative agency than to testimony and reports of other medical experts in determining whether a claimant is disabled. Similarly, the ALJ is entitled to reject a treating physician's conclusions that a claimant is totally disabled and accept contradictory medical evidence in the record. Keating v. Secretary of Health & Human Servs., 848 F.2d 271 (1st Cir. 1988). That more

weight is given to those reports of non-primary treating physician is not an error of the ALJ. *See* Barrientos v. Secretary of Health & Human Servs., 820 F.2d 1, 2-3 (1st Cir. 1987).

The ALJ discussed also the various GAF (Global Assessment of Functioning)[2] scores which are used to report the clinician's judgment of the individual's overall level of functioning at the time of the evaluation, unless otherwise clarified. The patient had been assigned various GAF scores during treatment. GAF scores offer a snapshot of one's state at the time of evaluation, but for an impairment to equal a listing it must meet also the duration requirement. See explanation provided by Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders (DSM IV-TR)* (4th ed. 2000) concerning how the system works, which is a way for a mental professional to turn raw medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning and could present considerable help to an ALJ. Still, the Commissioner has previously made a determination that GAF scores do not have a direct correlation to the severity requirements in the Social Security Administration's mental disorder listings. 65 Fed.Reg. 50,746, 50,765, 2000 WL 1173632 (F.R.) (Aug. 21, 2000). *See* Halverson v. Astrue, 600 F.3d 922, 930-931 (10th Cir. 2010); Howard v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir. 2002).[3]

---

[2] "The GAF is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) [DSM-IV-TR] at 32.... A GAF score of 41-50 indicates '[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning,' such as inability to keep a job. *Id.* [at 34]." Langley v. Barnhart, 373 F.3d 1116, 1123 n. 3 (10th Cir.2004).

[3] While a GAF score may be of considerable help to the ALJ in formulating the residual functional capacity, it is not essential to the RFC's accuracy. Howard, 276 F.3d at 241. *See* Juszczyk v. Astrue, 542 F.3d 626, 632-36 (8th Cir. 2008) (holding the ALJ's decision not to rely on the physician's GAF assessment was supported by substantial evidence in the record where the assessment was extreme in light of the contradictory medical evidence).

To review the final decision of the Commissioner courts must determine if the evidence of record meets the substantial evidence criteria. Substantial evidence is "more than a mere scintilla and such, as a reasonable mind might accept as adequate to support a conclusion". Richardson v. Perales, 402 U.S. 389 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197 (1938). The findings of the Commissioner as to any fact are conclusive, if supported by the above stated substantial evidence.[4] The court would set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on a legal error. *See* Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Rodríguez, 647 F.2d at 222.

Based on the above summarized, the ALJ determined Díaz-Cruz was not under disability for he retained the residual functional capacity to perform his past relevant work as a waiter and buffet manager. Plaintiff's medical impairments, as sustained by the medical evidence on record, did not result in major limitations for it is shown plaintiff responded well to treatment, remained stable, presented no neurological compromise, and showed no atrophies or muscle weakness. His mental capacity was consistently described through the medical evidence as alert, cooperative, logical, coherent and relevant, and oriented in the three spheres. Plaintiff had no blocking of thought and the diagnosis of major depression did not require hospitalization nor emergency treatment. Plaintiff's functional mental limitations were considered to impose only mild limitations in activities of daily living, moderate limitations in social functioning and mild limitations in maintaining concentration, persistence and pace, without episodes of decompensation.

---

[4] Falu v. Secretary of Health & Human Servs., 703 F. 2d 24 (1st Cir. 1983).

Thus, the ALJ considered plaintiff Díaz-Cruz had only mild restriction on his activities of daily living, mild restrictions in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace and no episodes of decompensation. Plaintiff is always depicted in the record as being well groomed, maintaining interest, involved in gardening activities and playing with animals. Thus, as discussed by the Commissioner in its memorandum of law, the ALJ applied the special technique outlined by 20 C.F.R. §404.1520a for evaluation of severity of the alleged mental condition, finding it imposed no non-exertional limitations to perform the work plaintiff previously held.

Finally, we give deference to the ALJ's interpretation of the medical record and we note that, although an ALJ is not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion, upon the existence of conflicts in the medical record from the report and sources, it is not for the Court to resolve same. *See* Nguyen v. Chater, 172 F.3d 31 (1st Cir. 1999); Lizotte v. Secretary of Health & Human Servs., 654 F.2d 127 (1st Cir. 1981) (the resolutions of conflicts in the evidence and the determination of the ultimate question of disability is for the ALJ, not for the doctors or for the courts). *See also* Rodríguez v. Secretary of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

In view of the foregoing, this Magistrate Judge opines the decision of the Commissioner is supported by substantial evidence in the record as whole, insofar as plaintiff's lack of a significant mental impairment and as to exertional limitations for his back and leg pain and conditions which did no preclude the performance of light kind of

work consonant with his past relevant experience. Thus, the finding of no disability is supported by the evidence in the record as a whole and the proper evaluation of all said evidence.

## CONCLUSION

For the reasons above discussed, this United States Magistrate Judge, having perused the record and considered there is substantial evidence in support of the decision rendered by the Commissioner concludes the Commissioner's decision is to be AFFIRMED.

IT SO ORDERED.

At San Juan, Puerto Rico, on this 28th day of July of 2011.

          S/CAMILLE L. VELEZ-RIVE
          CAMILLE L. VELEZ RIVE
          UNITED STATES MAGISTRATE JUDGE